## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| Continental Casualty Company, <br>     an Illinois insurance company, <br><br>     and <br><br> Continental Insurance Company, <br>     An Illinois insurance company, <br><br>         Plaintiffs, <br><br>     v. <br><br> Complete Construction LLC <br>     a/k/a Complete Construction Services, <br>     a Kansas limited liability company, <br><br>     and <br><br> Frog Eyes, LLC <br>     A Kansas limited liability company <br><br>         Defendants. | Case No.: _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Continental Casualty Company and Continental Insurance Company file this Complaint for Declaratory Judgment seeking a declaration of legal rights and remedies among the parties relating to both a policy of liability insurance and an umbrella policy, and in support thereof state and allege as follows.

### Parties

1.  Plaintiff Continental Casualty Company (herein referred to as "Continental Casualty") is a corporation organized to do the business of insurance under the laws of the State of Illinois with its headquarters and principal place of business in Illinois.

2.   Plaintiff Continental Insurance Company ("Continental Insurance") is a corporation organized to do the business of insurance under the laws of the State of Illinois with its headquarters and principal place of business in Illinois.  Continental Casualty and Continental Insurance are affiliated insurance companies that use the service mark "CNA" in connection with their underwriting and claims activities.

3.   Defendant Complete Construction LLC, also known as Complete Construction Services ("Complete Construction") is a Kansas limited liability company whose sole member is a citizen of the State of Kansas.

4.   Defendant Frog Eyes, LLC ("Frog Eyes") is a Kansas limited liability company whose sole member is a citizen of the State of Kansas.

### Jurisdiction and Venue

5.   This court has subject matter jurisdiction by way of diversity of citizenship pursuant to 28 U.S.C. §1332 because all Plaintiffs are citizens of a different state than all Defendants, and the matter in controversy exceeds $75,000 exclusive of interest and costs.

6.   Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b) because Complete Construction and Frog Eyes reside in this district and are residents of this state, and a substantial part of the events or omissions giving rise to this claim occurred in this district.

7.   Declaratory judgment is appropriate herein pursuant to 28 U.S.C. §2201, because an actual controversy of a ripe and justiciable nature exists between the Parties.  Plaintiffs ask this Court to declare the rights and other legal relations of Plaintiffs and all Defendants relative to the policies of insurance referred to below.

## Facts

### A.    The Insurance Policies

8.   On or about August 31, 2016, Continental Casualty issued a policy of insurance in Kansas to Complete Construction, providing insurance for business property, inland marine, and general liability, among other things, subject to certain terms, conditions and endorsements, for a policy period from August 31, 2016 to August 31, 2017, and identified as Policy Number 6043297333 (the "Primary Policy").  A copy of the Primary Policy is submitted herewith as **Exhibit A**.

9.   The Primary Policy has a limit of liability of $1,000,000 each occurrence.

10. Plaintiff Continental Insurance issued a policy of excess and umbrella liability insurance in Kansas to Complete Construction, providing liability insurance, among other things, subject to certain self-insured retention, terms and conditions, for a policy period from August 31, 2016 to August 31, 2017, and identified by Policy Number CUE 6043297364 (the "Umbrella Policy").  A copy of the Umbrella Policy is submitted herewith as **Exhibit B**.

11. The Umbrella Policy has a limit of liability of $5,000,000 each incident and in the aggregate.

### B.    The Underlying Lawsuit

12. Plaintiffs' Complaint for Declaratory Judgment herein concerns a claim by Frog Eyes against Complete Construction in an underlying lawsuit as described below.

13. On November 16, 2017, Complete Construction filed a Petition to Enforce Mechanic's Lien in a lawsuit against Frog Eyes and others, claiming damages of approximately $644,000 based upon a construction contract and lien, and relating to an August 12, 2016 contract between them, in the case of *Complete Construction, LLC vs. Frog Eyes, LLC, et al.*, Jackson County Missouri Circuit Court Case No. 1716-CV28222 (the " Underlying Lawsuit").

3

14. Complete Construction's Petition in the Underlying Lawsuit alleged the following claims against Frog Eyes:

      a.   Count I – Breach of Contract;

      b.   Count II – Enforcement of Mechanic's Lien;

      c.   Count III – Violation of Missouri Private Prompt Pay Act;

      d.   Count IV – Fraud;

      e.   Count V – Negligent Misrepresentation;

      f.   Count VI – Tortious Interference with a Business Expectancy;

      g.   Count VII – Unjust Enrichment; and

      h.   Count VIII – Quantum Meruit.

15. The Underlying Lawsuit included a number of additional parties that are not necessary or relevant to this Court's jurisdiction nor any of the issues to be presented in this matter.

16. On December 7, 2017, Frog Eyes filed its Counterclaim against Complete Construction, making the following claims arising out of the construction project:

      a.   Count I – Breach of Contract;

      b.   Count II – Fraud;

      c.   Count III – Gross Negligence;

      d.   Count IV – Trespass to Chattels; and

      e.   Count V – Prima Facie Tort.

17. For Count I – Breach of Contract, Frog Eyes alleged that Complete Construction had breached the construction contract, failed or refused to fix defective and/or non-compliant work, failed to obtain substantial completion by the agreed deadline, ceased work on the project without giving proper notice, and caused substantial damage to the building.

18. Frog Eyes alleged that Complete Construction's breach of contract had caused damage totaling $770,957.04 for liquidated damages, estimated cost to remediate the defective or non-compliant work, the estimated cost to complete the project, and improper billings.

19.  For Count III - Gross Negligence, Frog Eyes alleged that Complete Construction had failed to perform its work on the project in a workmanlike manner and had refused or failed to properly seal the building prior to ceasing work, when it knew a rain storm was highly likely. The events upon which the Counterclaim is based, occurred during the Policy Period of the Primary Policy and the Umbrella Policy. Frog Eyes alleged that its damages for Complete Construction's negligence were $3,097,037.12, which included the damages requested for breach of contract, as well as damage caused by water intrusion, lost rental income, other lost income and business opportunities, and other damages resulting from delay in completion.

20. Complete Construction notified Plaintiff Continental Casualty of the Counterclaim on February 27, 2018 and requested that Continental Casualty defend Complete Construction. Continental Casualty agreed to provide a defense to Complete Construction pursuant to the terms of the Primary Policy.

21. Complete Construction requested that Continental Casualty appoint as defense counsel the same counsel already representing Complete Construction on its affirmative claims.  Continental Casualty agreed to that request.

22. At or before the time such counsel undertook the defense, Continental Casualty timely issued a March 5, 2018 letter advising Complete Construction of Continental Casualty's position regarding coverage for the claims alleged by Frog Eyes and reserving Continental Casualty's rights with respect to certain terms and exclusions in the Primary Policy.

23. The March 5, 2018 letter addressed the terms of the Primary Policy's Insuring Agreement and certain exclusions from coverage, as those relate to the Counterclaim in the Underlying Lawsuit.  These exclusions are set forth in the following paragraphs, and are referenced as:

   a.  Expected or Intended Injury exclusion;

   b.  Contractual Liability exclusion;

   c.  Damage to Property exclusion;

   d.  Damage to Your Work exclusion; and

   e.  Damage to Impaired Property or Property Not Physically Injured exclusion.

24. The Primary Policy contains a Commercial General Liability Coverage Part that provides coverage under **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, as follows:

   **1.   Insuring Agreement**

   a.  We will pay those sums that the **Insured** becomes legally obligated to pay as **damages** because of **bodily injury** or **property damage** to which this insurance applies.  We will have the right and duty to defend the **Insured** against any **suit** seeking those **damages**.  However, we will have no duty to defend the **Insured** against any **suit** seeking **damages** for **bodily injury** or **property damage** to which this insurance does not apply. We may, at our discretion, investigate any **occurrence** and settle any claim or **suit** that may result.

   b.  This insurance applies to **bodily injury** and **property damage** only if

   (i)  The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**....

25. An **occurrence** is defined by the Primary Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

26. The Expected or Intended Injury exclusion in the Primary Policy, as amended  by the **Contractors' General Liability Extension Endorsement** No. 3, states that the insurance does not apply to:

**Expected Or Intended Injury**

**Bodily injury** or **property damage** expected or intended from the standpoint of the **Insured**.  This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

27. The Contractual Liability exclusion in the Primary Policy states that the insurance does not apply to:

    **b. Contractual Liability**

        **Bodily injury** or **property damage** for which the I**nsured** is obligated to pay **damages** by reason of the assumption of liability in a contract or agreement ..…

28. The Damage to Property exclusion in the Primary Policy, as amended by the **Contractors' General Liability Extension Endorsement** No. 3 (End. 3) states that the insurance does not apply to:

    **j. Damage to Property**

        **Property damage** to:…

    **(5)** That particular part of real property on which the **Named Insured** or any contractors or subcontractors working directly or indirectly on the **Named Insured's** behalf are performing operations, if the **property damage** arises out of those operations; or

    **(6)** That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

29. The Damage to Your Work exclusion in the Primary Policy states that the insurance does not apply to:

    **l. Damage to Your Work**

        **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.**

        This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

30. The Damage to Impaired Property or Property Not Physically Injured exclusion in the Primary Policy states in pertinent part that the insurance does not apply to:

**m. Damage to Impaired Property Or Property Not Physically Injured**

**Property damage** to **impaired property** or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms….

31. For the Umbrella Policy, Coverage A applies only in excess of the applicable limits of the Primary Policy, attaches only after the Primary Policy's limits have been exhausted through payment of covered loss, and is subject to the same exclusions as the Primary Policy. Coverage B of the Umbrella Policy is subject to similar exclusions as the Primary Policy, including the Damage to Impaired Property or Property not Physically Injured exclusion, the Contractual Liability exclusion, the Damage to Property exclusion, and the Damage to Your Work exclusion.

32. The March 5, 2018 reservation of rights letter advised, among other things, that the claim for damage caused by water intrusion triggered a duty to defend, but that there was no coverage for the claims of defective workmanship and non-compliance, claims for damage to real property arising out of Compete Construction's operations, claims for damage to property that must be restored, repaired or replaced because the work was incorrectly performed, and claims for fraud and breach of contract. The letter also stated that if the evidence demonstrated intentional conduct on the claims of gross negligence, the expected or intended injury exclusion would preclude coverage. Subject to its reservation of rights, Continental Casualty agreed to defend Complete Construction with respect to the Counterclaim.

33. Complete Construction, through its attorney, acknowledged receipt of the March 5, 2018 reservation of rights letter.

34. Continental Casualty continued to pay the fees and expenses for counsel to defend the Counterclaim through conclusion of trial in the Underlying Lawsuit.

**C.**     **Partial Settlement and Trial in the Underlying Lawsuit**

35. The Underlying Lawsuit came before Jackson County Missouri Circuit Court Judge Joel Fahnestock for jury trial, beginning on October 28, 2019.

36. Immediately before trial, Continental Casualty reached an agreement with Frog Eyes to settle certain of the counterclaims against Complete Construction.  Specifically, Frog Eyes agreed to release and dismiss with prejudice Count III – Gross Negligence and Count IV – Trespass to Chattels, as well as any other claims of negligence against Complete Construction that might be contained or otherwise inferred from the allegations in the Counterclaim.  In consideration of the release and dismissal of such claims, Continental Casualty agreed to pay Frog Eyes the sum of $250,000.

37. As a result of the settlement agreement, Frog Eyes dismissed those claims against Complete Construction before the jury was empaneled, and both Complete Construction and Frog Eyes proceeded to trial on Complete Construction's affirmative claims against Frog Eyes and the remaining claims asserted by Frog Eyes in the Counterclaim.  Frog Eyes later signed a settlement agreement entitled Release of Claims, submitted herewith as **Exhibit C,** and Continental Casualty completed the settlement payment.

38. As a result of the settlement, all of the potentially covered claims and damages asserted against Complete Construction were released and dismissed.

39. Upon Frog Eyes' pretrial dismissal of Counts III and IV, and stipulation on the record that all claims for negligence and gross negligence were likewise dismissed, trial began.

40. The trial concluded on November 6, 2019, with jury verdicts as follows:

    a.  Verdict A:  On the claims of Complete Construction against Frog Eyes, the jury found in favor of Frog Eyes on all submitted claims, including breach of contract, fraudulent misrepresentation, and negligent misrepresentation.

    b.  Verdict B:  On the counterclaim of Frog Eyes against Complete Construction for breach of contract, the jury found in favor of Frog Eyes and assessed damages at $782, 316.

    c.  Verdict C:  On the counterclaim of Frog Eyes against Complete Construction for fraudulent misrepresentation, the jury found in favor of Frog Eyes and assessed $0 damages.  On the counterclaim of Frog Eyes against Complete Construction for prima facie tort the jury found in favor of Complete Construction.

41. Jury Instruction #17 from the trial is the so-called "verdict directing instruction" on the Frog Eyes Counterclaim against Complete Construction for breach of contract.  That instruction directed the jury to find for Frog Eyes if the jury believed that:

        (1) the parties had agreed to a contract, and

        (2) Frog Eyes performed its obligations, and

        (3) Complete Construction failed to perform its obligations.

42. In Verdict B the jury found in favor of Frog Eyes on this instruction.  This liability did not result from an accident, and therefore is not an **occurrence** under the Primary Policy.

43. Jury Instruction #21 is the "verdict directing instruction" on the Frog Eyes counterclaim against CCS for misrepresentation.  That instruction directed the jury to find for Frog Eyes if the jury believed that:

(1) Complete Construction represented that it would leave the project properly protected from the elements, and

(2) Complete Construction intended Frog Eyes to rely on that representation and take no further action to protect the project from the elements, and

(3) the representation was false, and

(4) Complete Construction knew it was false or did not know if it was true, and

(5) the representation was material to Frog Eyes, and

(6) Frog Eyes relied on the representation, and

(7) Frog Eyes sustained damage.

44. In Verdict B the jury found in favor of Frog Eyes on this instruction, although the jury found $-0- damages.  Any liability did not result from an accident, and therefore is not an **occurrence** under the Primary Policy.

45. The Damage to Property exclusion applies both because Complete Construction's liability under Verdict B arises out of Complete Construction's operations (or the operations of its subcontractors), as well as any work incorrectly performed.

46. The Damage to Your Work exclusion applies to all damages to the work on the project performed by Complete Construction, as defined in the Primary Policy.

47. The Damage to Impaired Property or Property Not Physically Injured exclusion applies, because the Frog Eyes project meets the Primary Policy definition of **impaired property,** at Page 16 of 20 item 8, such that any property  damage resulting to the project is excluded from coverage due to the jury's determination that CCS delayed or failed to perform its obligations, as specified in Jury Instruction #17 and set forth in Verdict B.

**D.**     **Post-Trial Developments**

48. On November 20, 2019, Frog Eyes signed the Release of Claims evidencing the earlier settlement agreement, attached as Exhibit C.

49. On November 20, 2019, Continental Casualty sent a letter to Complete Construction advising that the Primary Policy provides no coverage for the jury verdicts, because: (a) there was no "occurrence" as defined by the Continental Casualty policy; (b) the Expected or Intended Injury exclusion applies; (c) the Contractual Liability exclusion applies; (d) the Damage to Property exclusion applies; (e) the Damage to Your Work exclusion applies; (f) the Damage to Impaired Property exclusion applies. The November 20, 2019 letter is submitted herewith as Exhibit D.

50. Continental Casualty's November 20, 2019 letter advised Complete Construction of its intent to withdraw from the defense upon the earlier of the filing of a motion for new trial or December 4, 2019, and that Continental would not be responsible for any further costs (including among other things any appeal or supersedeas bond) or attorneys' fees incurred in the case by Complete Construction.

51. On March 12, 2020, counsel for Complete Construction advised Continental Casualty, that if the trial court were to enter judgment against Complete Construction on the jury verdict, that Complete Construction would take all steps under Missouri law to hold CNA accountable for that judgment.

52. On March 20, 2020, Continental Casualty advised Complete Construction that it would resume providing a defense and agreed to reimburse the costs and attorneys' fees incurred in the interim.

53. As of the date of filing of this Complaint, Continental Casualty continues to provide a defense to Complete Construction.

54. Following various post-trial motions, Judge Fahnestock denied Complete Construction's request for setoff or credit and entered Final Judgment in the Underlying Lawsuit on July 6, 2020. Thereafter, she denied Complete Construction's further post-judgment motion for new trial on September 11, 2020.

### E.      Appeal in the Underlying Lawsuit

55. On September 21, 2020, Complete Construction, through its counsel, filed a notice of appeal to the Court of Appeals for the Western District of Missouri sitting in Kansas City, MO, where the appeal is now pending.

56. Shortly before the filing of that notice of appeal, on September 15, 2020, Continental Casualty's counsel received an email from Complete Construction's counsel which demanded that Continental Casualty post a bond in order to stay execution of the judgment.

57. Continental Casualty has advised Complete Construction as of October 2, 2020, that while the Primary Policy contains no obligation to post or provide security for a bond to suspend execution on the judgment, Continental Casualty stands ready and willing to pay for the cost or premium for such bond to be obtained by Complete Construction.

58. No potentially covered claims remain in the Underlying Lawsuit now on appeal. Accordingly, Continental Casualty has no further obligation to defend CCS in the Underlying Lawsuit.

### Request for Declaratory Relief

59. An actual controversy exists between Plaintiffs and Defendants regarding whether the Primary Policy and/or the Umbrella Policy provide coverage for the judgment in the Underlying Lawsuit and whether Continental Casualty and Continental Insurance are obligated to continue to

provide a defense to Complete Construction or to post a bond to suspend execution on the judgment.

60. Plaintiffs request a declaration of the parties' rights and obligations with respect to the Primary Policy and the Umbrella Policy as follows:

    a.  Continental Casualty has no obligation to defend Complete Construction under the Primary Policy for the appeal in the Underlying Lawsuit.

    b.  Continental Insurance has no obligation to defend Complete Construction under the Umbrella Policy for the appeal in the Underlying Lawsuit.

    c.  Continental Casualty and Continental Insurance have no obligation to indemnify Complete Construction for the judgment in the Underlying Lawsuit.

    d.  Continental Casualty and Continental Insurance have no obligation to post a bond, provide a bond, or provide security for any bond that may be required to suspend execution on the judgment in the Underlying Lawsuit.

61. As set forth in Federal Rule of Civil Procedure 57, the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate, and the Court may order a speedy hearing of the declaratory-judgment action.

**WHEREFORE**, Plaintiffs pray for (i) a speedy hearing of the declaratory-judgment action pursuant to Federal Rule of Civil Procedure 57, and (ii) judgment of this Court, pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57 declaring the rights and legal relationships between Plaintiffs Continental Casualty Company and Continental Insurance Company and Defendants relative to the Primary Policy and the Umbrella Policy, and for Plaintiffs' costs, and for such other and further relief as permitted by 28 U.S.C. §2202 and as this Court deems proper.

Respectfully submitted,

**COOLING & HERBERS, P.C.**

/s/ Paul V. Herbers
Paul V. Herbers, # 77777
Elizabeth Vasseur-Browne, # 25170
1100 Main Street, Suite 2400
Kansas City, Missouri   64105
(816) 474-0777
pherbers@coolinglaw.com
lbrowne@coolinglaw.com

**HUSCH BLACKWELL LLP**
Tyler J. Scott, #24940
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000
tyler.scott@huschblackwell.com
ATTORNEYS FOR PLAINTIFFS
CONTINENTAL CASUALTY COMPANY AND
CONTINENTAL INSURANCE COMPANY

**<u>Designation of Place of Trial</u>**

Plaintiff designates Kansas City, Kansas as the place of trial.

**COOLING & HERBERS, P.C.**

/s/ Paul V. Herbers
Paul V. Herbers, # 77777
Elizabeth Vasseur-Browne, # 25170
1100 Main Street, Suite 2400
Kansas City, Missouri   64105
(816) 474-0777
pherbers@coolinglaw.com
lbrowne@coolinglaw.com